## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC, | Case No. 1:16-cv-00909 |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| v. | |
| RTIC Soft Sided Coolers, LLC, | (1) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 |
| RTIC Coolers, LLC, | (2) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a); |
| RTIC Web Services, LLC, and | (3) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a); |
| Corporate Support and Fulfillment, LLC, | (4) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c); |
| **Defendants.** | (5) TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103; |
| | (6) COMMON LAW TRADE DRESS INFRINGEMENT; |
| | (7) COMMON LAW UNFAIR COMPETITION; |
| | (8) COMMON LAW MISAPPROPRIATION; AND |
| | (9) UNJUST ENRICHMENT. |
| | **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its Complaint against RTIC Soft Sided Coolers, LLC ("RTIC Soft Sided Coolers"), RTIC Coolers, LLC ("RTIC Coolers"), RTIC Web Services, LLC ("RTIC Web Services"), and Corporate Support and Fulfillment, LLC ("CS&F") (collectively, "Defendants"), alleges as follows:

## The Parties

1.     YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5301 Southwest Parkway, Suite 2000, Austin, TX 78735.

2.     Upon information and belief, RTIC Soft Sided Coolers is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20702 Hempstead Road, Suite 110, Houston, TX, 77065.

3.     Upon information and belief, RTIC Coolers is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20702 Hempstead Road, Suite 110, Houston, TX, 77065.

4.     Upon information and belief, RTIC Web Services is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20702 Hempstead Road, Suite 110, Houston, TX, 77065.

5.     Upon information and belief, CS&F is a corporation organized and existing under the laws of the State of Texas with a principal place of business at 20702 Hempstead Road, Suite 110, Houston, TX, 77065.

## Jurisdiction and Venue

6.     This is an action for utility patent infringement, design patent infringement, trade dress infringement, unfair competition and false designation of origin, false advertising, trade dress dilution, misappropriation, and unjust enrichment.  This action arises under the Patent Act, 35 U.S.C. § 1, *et seq*.; the Trademark Act (also referred to as the Lanham Act), 15 U.S.C. § 1051, *et seq*.; the Texas Business & Commerce Code; and federal and state common law, including the law of the State of Texas.

7.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

8.     This Court has personal jurisdiction over Defendants because, *inter alia*, each Defendant is incorporated in the State of Texas, each Defendant has its principal place of business in the State of Texas, and each Defendant has done and is doing business in the State of Texas, including in this District.   For example, and as discussed in more detail below, Defendants have advertised, promoted, offered for sale, sold, and distributed, and continue to advertise, promote, offer for sale, sell, and distribute infringing products to customers and potential customers, including through one of the Defendants' principal websites, https://www.rticcoolers.com ("RTIC Website"), Defendants have advertised, promoted, offered for sale, and continue to advertise, promote, and offer for sale infringing products to customers and potential customers through another one of Defendants' principal websites, https://www.facebook.com/rticcoolers ("RTIC Facebook Page"), Defendants' tortious acts giving rise to this lawsuit are occurring in the State of Texas, including in this District, and Defendants' customers and potential customers reside in the State of Texas, including in this District.

9.     Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) & (c).

## General Allegations – YETI's Intellectual Property

10.     For almost ten years, YETI has continuously engaged in the development, manufacture, and sale of products, including cooler products.   Among YETI's cooler products, for many years, YETI has continuously engaged in the development, manufacture, and sale of soft-sided cooler products.   YETI created unique, distinctive, and non-functional designs for

YETI's soft-sided cooler products.  Due to YETI's commitment to high quality and innovation, YETI's distinctive cooler products have become popular and have enjoyed substantial sales.

11.     Among other intellectual property, YETI owns U.S. Patent No. 9,139,352 ("the '352 Patent") related to YETI's soft-sided cooler products.  The '352 Patent is titled "Insulating Container" and a copy is attached as Exhibit A.  YETI owns all right, title, and interest in the '352 Patent.

12.     YETI also owns U.S. Design Patent No. D752,347 ("the D'347 Patent") related to YETI's soft-sided cooler products.  The D'347 Patent is titled "Insulating Device" and a copy is attached as Exhibit B.  YETI owns all right, title, and interest in the D'347 Patent.

13.     YETI also owns trade dress rights relating to the source identifying features of its soft-sided cooler designs.  YETI has extensively and continuously advertised, promoted and used its designs for years in the United States and in Texas.  Through that extensive and continuous advertising, promotion and use, YETI's designs have become well-known indicators of the origin and quality of YETI's soft-sided cooler products. YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous.

14.     Specifically, YETI sells and promotes the following soft-sided cooler products: the Hopper Flip™, the Hopper™ 20, the Hopper™ 30, and the Hopper™ 40 (collectively referred to as "the Hopper™ Soft-Sided Coolers").  YETI has invested substantially in the design, development, manufacture, and marketing of the Hopper™ Soft-Sided Coolers.

15.     YETI has enjoyed significant sales of the Hopper™ Soft-Sided Coolers throughout the United States, including to customers in the state of Texas.  YETI has expended significant resources advertising and marketing the Hopper™ Soft-Sided Coolers.

16.     The Hopper<sup>TM</sup> Soft-Sided Coolers designs also have distinctive and non-functional features that identify to consumers that the origin of the Hopper<sup>TM</sup> Soft-Sided Coolers is YETI. As a result of at least YETI's continuous and exclusive use of the Hopper<sup>TM</sup> Soft-Sided Coolers, YETI's marketing, advertising, and sales of the Hopper<sup>TM</sup> Soft-Sided Coolers, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Hopper<sup>TM</sup> Soft-Sided Coolers, which consumers have come to uniquely associate with YETI.  The illustration below shows exemplary images of the Hopper<sup>TM</sup> Soft-Sided Coolers that includes the YETI Trade Dress.



17.     YETI has trade dress rights in the overall look and appearance of the Hopper<sup>TM</sup> Soft-Sided Coolers, including, but not limited to, the visual flow of the Hopper<sup>TM</sup> Soft-Sided Coolers; the design, style, and appearance of the features of the Hopper<sup>TM</sup> Soft-Sided Coolers, including the walls, the bases, the tops, the straps, the loops, the stitching, the zippers, the connections, and the handles; the visual connection and relationship among the features in the Hopper<sup>TM</sup> Soft-Sided Coolers; the style, design, and appearance of design aspects of the Hopper<sup>TM</sup> Soft-Sided Coolers; the colors, color contrasts, and color combinations of the Hopper<sup>TM</sup> Soft-Sided Coolers; and the interplay and placement of the various features of the Hopper<sup>TM</sup> Soft-Sided Coolers.  YETI's trade dress rights in the Hopper<sup>TM</sup> Soft-Sided Coolers are collectively referred to as "the YETI Trade Dress."

18.     As a result of YETI's substantially exclusive, continuous, and significant use, advertising, promotion, and sales of soft-sided coolers bearing the YETI Trade Dress, and the publicity and attention that has been paid to the YETI Trade Dress, the YETI Trade Dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate it as a source identifier of YETI.

### General Allegations – Defendants' Unlawful Activities

19.     RTIC is a habitual copier and infringer of YETI products and intellectual property.  RTIC is built on a business model to copy YETI products until forced to stop.

20.     This is the third lawsuit that YETI has been forced to file against RTIC in view of RTIC's continual copying and infringement.

21.     YETI first filed suit against RTIC in July 2015 in view of RTIC copying and infringing YETI's rights related to hard coolers.  *YETI Coolers, LLC v. RTIC Coolers, LLC*, No: 1:15-cv-00597-RP (W.D. Tex.).

22.     YETI then filed suit against RTIC in March 2016 in view of RTIC copying and infringing YETI's rights related to drinkware.  *YETI Coolers, LLC v. RTIC Coolers, LLC*, *et al.* No. 1:16-cv-00264-RP (W.D. Tex.).

23.     RTIC's copying and infringement continues with the conduct giving rise to this lawsuit.

24.     Specifically, Defendants have purposefully advertised, promoted, offered for sale, sold, and distributed, and continue to advertise, promote, offer for sale, sell, and distribute soft-sided coolers under at least the names "RTIC Lunch Box," "RTIC SoftPak 20," "RTIC SoftPak 30," "RTIC SoftPak 40," (collectively, the "Infringing Products") that violate YETI's rights, including the rights protected by the '352 Patent, by the D'347 Patent, and by the YETI Trade

Dress.  On information and belief, Defendants also are making or having made and/or importing the Infringing Products into the United States.  Defendants' Infringing Products are confusingly similar imitations of YETI's products.    Defendants' actions all have been without the authorization of YETI.  The illustration below shows exemplary images of RTIC's Infringing Products.



25.    The Infringing Products are advertised, promoted, offered for sale, and sold at least on the RTIC WebSite and on the RTIC Facebook Page.  According to allegations made by Defendants in Court filings, the RTIC Website and the RTIC Facebook Page allegedly have been owned, operated, and maintained by RTIC Web Services since March 7, 2016, and, prior to March 7, 2016, the RTIC Website and the RTIC Facebook page were allegedly owned and operated by CS&F.

26.    As a result of Defendants' activities related to the Infringing Products, there is a strong likelihood of confusion between Defendants and their products on the one hand, and YETI and its products on the other hand.

27.    YETI promoted, advertised, and used the YETI Trade Dress extensively and continuously before Defendants began promoting, advertising, selling, offering to sell, or distributing, the Infringing Products.  Moreover, the YETI Trade Dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before Defendants commenced their use of the YETI Trade Dress.

## Count I: Patent Infringement of U.S. Patent No. 9,139,352

28.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 27 above, inclusive, and incorporates them by reference herein.

29.     Defendants have infringed and continue to infringe the '352 Patent at least by using, offering to sell, and selling the Infringing Products, and on information and belief by making the Infringing Products and/or importing them into the United States, which are covered by one or more claims of the '352 Patent.

30.     Defendants' acts of infringement have been without express or implied license by YETI, are in violation of YETI's rights, and will continue unless enjoined by this Court.

31.     On information and belief, Defendants' infringement of the '352 Patent has been and is willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and characteristic of a pirate, as evidenced at least by the similarities between the Infringing Products and the inventions claimed in the '352 Patent, and by Defendants' ongoing and continuing disregard for YETI's rights.

32.     This is an exceptional case in view of, *inter alia*, Defendants' activities and infringement described above and herein.

33.     YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief at least under at least 35 U.S.C. §§ 281, 284, and 285.

34.     Defendants also have caused, are causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

## Count II: Patent Infringement of U.S. Design Patent No. D752,347

35.     YETI re-alleges each and every allegation set forth in paragraphs 1 through 27 above, inclusive, and incorporates them by reference herein.

36.     Defendants have infringed and continue to infringe the D'347 Patent at least by using, offering to sell, and selling the RTIC SoftPak 20 cooler, the RTIC SoftPak 30 cooler, and the RTIC SoftPak 40 cooler, and on information and belief by making these coolers and/or importing them into the United States, which are covered by the claim of the D'347 Patent.

37.     Defendants' acts of infringement have been without express or implied license by YETI, are in violation of YETI's rights, and will continue unless enjoined by this Court.

38.     On information and belief, Defendants' infringement of the D'347 Patent has been and is willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and characteristic of a pirate, as evidenced at least by the similarities between the Infringing Products and the inventions claimed in the D'347 Patent, and by Defendants' ongoing and continuing disregard for YETI's rights.

39.     This is an exceptional case in view of, *inter alia*, Defendants' activities and infringement described above and herein.

40.     YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief at least under at least 35 U.S.C. §§ 281, 284, 285, 289.

41.     Defendants also have caused, are causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

**Count III: Trade Dress Infringement**
**Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

42.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

43.     Based on the activities described above, including, for example, Defendants' advertisements, offers to sell, and sales of the Infringing Products, Defendants violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing YETI's rights in the YETI Trade Dress. Defendants' use of the YETI Trade Dress and/or colorable imitations thereof, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with YETI and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, and/or otherwise associated with YETI.

44.     The YETI Trade Dress is entitled to protection under the Lanham Act.  The YETI Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously advertised, promoted, and used the YETI Trade Dress in the United States.  As a result, the YETI Trade Dress has become a well-known indicator of the origin and quality of the Hopper™ Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced their use of the YETI Trade Dress and/or colorable imitations thereof in connection with the Infringing Products.

45.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury

to the goodwill and reputation for quality associated with the YETI Trade Dress and its Hopper™ Soft-Sided Coolers.

46.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious, as evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, and by Defendants ongoing and continuing disregard for YETI's rights.

47.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Defendants' profits, YETI's actual damages, enhanced damages, costs, and YETI's reasonable attorney fees under at least 15 U.S.C. §§ § 1125(a), 1116, and 1117.

### Count IV:  Unfair Competition and False Designation of Origin Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

48.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as fully set forth herein.

49.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the Infringing Products, in direct competition with YETI, violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitutes unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to YETI through their use of the YETI Trade Dress and/or colorable imitations thereof and because such use is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

50.     The YETI Trade Dress is entitled to protection under the Lanham Act.  The YETI Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously advertised, promoted and used its Trade Dress in the United States.  Through that

extensive and continuous use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI's Hopper™ Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced its unlawful use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

51.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress and its Hopper™ Soft-Sided Coolers.

52.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, and by Defendants' ongoing and continuing disregard for YETI's rights.

53.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count V: Trade Dress Dilution Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

54.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

55.     Defendants' advertisements, promotions, offers to sell, sales, and/or distribution of the Infringing Products violates § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

56.     The YETI Trade Dress is entitled to protection under the Lanham Act.  The YETI Trade Dress includes unique, distinctive, and non-functional designs.  The YETI Trade Dress has acquired distinctiveness through YETI's extensive and continuous advertising, promotion and use of the YETI Trade Dress in the United States.  Through that extensive and continuous use, the YETI Trade Dress has become a famous well-known indicator of the origin and quality of YETI's Hopper$^{TM}$ Soft-Sided Coolers throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI's Hopper$^{TM}$ Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress became famous and acquired this secondary meaning before Defendants commenced its unlawful use of the YETI Trade Dress and colorable imitations thereof in connection with the Infringing Products.

57.     Defendants' use of the YETI Trade Dress and colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous Trade Dress, at least by eroding the public's exclusive identification of YETI's famous Trade Dress with YETI, by lessening the capacity of YETI's famous Trade Dress to identify and distinguish YETI's cooler products, by associating the YETI Trade Dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous Trade Dress.

58.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress and its Hopper$^{TM}$ Soft-Sided Coolers.

59.     Defendants' use of the YETI Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, and by Defendants' ongoing and continuing disregard for YETI's rights.

60.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

### Count VI: Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103

61.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

62.     Defendants' advertisements, offers to sell, and sales of the Infringing Products, and on information and belief Defendants making the Infringing Products and/or importing the Infringing Products into the United States, Defendants have diluted and continue to dilute the YETI Trade Dress under §16.103 of the Texas Business & Commerce Code.  Defendants' use of the YETI Trade Dress and/or colorable imitations thereof is likely to cause and has caused dilution of YETI's famous Trade Dress at least by eroding the public's exclusive identification of YETI's famous Trade Dress with YETI, by lessening the capacity of YETI's famous Trade Dress to identify and distinguish YETI's cooler products, by associating the YETI Trade Dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous Trade Dress.

63.     The YETI Trade Dress is famous and is entitled to protection under Texas law. The YETI Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously advertised, promoted and used the YETI Trade Dress for years in

the State of Texas.  Through that extensive and continuous advertising, promotion and use, the YETI Trade Dress has become a famous and well-known indicator of the origin and quality of YETI's cooler products in the United States and in the State of Texas, and the YETI Trade Dress is widely recognized by the public throughout Texas as a designation of the source of YETI's Hopper[TM] Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas.  Moreover, the YETI Trade Dress became famous and acquired this secondary meaning before Defendants commenced their use of the YETI Trade Dress and/or colorable imitations thereof in connection with the Infringing Products.

64.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress and its cooler products.

65.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, and by Defendants' ongoing and continuing disregard for YETI's rights.

66.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, and YETI's reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

## Count VII: Common Law Trade Dress Infringement

67.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

68.     Defendants' advertisements, offers to sell, and sales of the Infringing Products, and/or distribution of the Infringing Products, in direct competition with YETI, constitute common law trade dress infringement, at least because Defendants' use of the YETI Trade Dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

69.     The YETI Trade Dress is entitled to protection under the common law.  The YETI Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously advertised, promoted and used the YETI Trade Dress in the United States and the State of Texas.  Through that extensive and continuous advertising, promotion, and use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI's Hopper<sup>TM</sup> Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced their use of the YETI Trade Dress and/or colorable imitations thereof in connection with the Infringing Products.

70.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury

to the goodwill and reputation for quality associated with the YETI Trade Dress and its Hopper<sup>TM</sup> Soft-Sided Coolers.

71.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, and by Defendants' ongoing and continuing disregard for YETI's rights.

72.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and YETI's reasonable attorney fees.

### Count VIII: Common Law Unfair Competition

73.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

74.     Based on the activities described above, including, for example, Defendants advertising, offering for sale, and selling the Infringing Products, in direct competition with YETI, constitutes common law unfair competition, at least by palming off/passing off Defendants' goods and/or has simulating the YETI Trade Dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship /affiliation of the Infringing Products, at least by creating a false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.  Defendants have also interfered with YETI's business.

75.     The YETI Trade Dress is entitled to protection under the common law.  The YETI Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously advertised, promoted and used the YETI Trade Dress in the United States and the

State of Texas.  Through that extensive and continuous advertising, promotion, and use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI's Hopper™ Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced their use of the YETI Trade Dress and/or colorable imitations thereof in connection with the Infringing Products.

76.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress and its Hopper™ Soft-Sided Coolers.

77.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, and by Defendants' ongoing and continuing disregard for YETI's rights.

78.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and YETI's reasonable attorney fees.

## Count IX: Common Law Misappropriation

79.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

80.     Defendants' advertisements, offers to sell, sales, and /or distribution of the Infringing Products, in direction competition with YETI constitute common law misappropriation.

81.     YETI created the products covered by the YETI Trade Dress through extensive time, labor, effort, skill, and money.  Defendants have wrongfully used the YETI Trade Dress and/or colorable imitations thereof in competition with YETI and gained a special advantage because Defendants were not burdened with the expenses incurred by YETI.  Defendants have commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the Infringing Products, by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

82.     The YETI Trade Dress is entitled to protection under the common law.  The YETI Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously advertised, promoted and used the YETI Trade Dress in the United States and the State of Texas.  Through that extensive and continuous advertising, promotion, and use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI's Hopper[TM] Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced their use of the YETI Trade Dress and/or colorable imitations thereof in connection with the Infringing Products.

83.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and

irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress and its cooler products.  Moreover, a result of its misappropriation, Defendants will, unless such conduct is enjoined by this Court, profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill of the YETI Trade Dress and its Hopper$^{TM}$ Soft-Sided Coolers.

84.     Defendants' misappropriation of the YETI Trade Dress has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the YETI Trade Dress, and by Defendants' ongoing and continuing disregard for YETI's trade dress rights.

85.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Defendants' profits, punitive damages, costs, and YETI's reasonable attorney fees.

## Count X: Unjust Enrichment

86.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

87.     Defendants' advertisements, offers to sell, sales, and /or distribution of the Infringing Products, in direct competition with YETI constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at YETI's expense.  Defendants have also, *inter alia*, operated with an undue advantage.

88.     YETI created the products covered by the YETI Trade Dress through extensive time, labor, effort, skill, and money.  Defendants have wrongfully used and are wrongfully using the YETI Trade Dress and/or colorable imitations thereof, and have gained and are gaining a wrongful benefit by undue advantage.  Defendants have not been burdened with the expenses

incurred by YETI, yet Defendants are obtaining the resulting benefits for their own businesses and products.

89.     The YETI Trade Dress is entitled to protection under the common law.  The YETI Trade Dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously advertised, promoted and used the YETI Trade Dress in the United States and the State of Texas.  Through that extensive and continuous advertising, promotion, and use, the YETI Trade Dress has become a well-known indicator of the origin and quality of YETI's Hopper™ Soft-Sided Coolers.  The YETI Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, the YETI Trade Dress acquired this secondary meaning before Defendants commenced their use of the YETI Trade Dress and/or colorable imitations thereof in connection with the Infringing Products.

90.     Defendants' use of the YETI Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the YETI Trade Dress and its Hopper™ Soft-Sided Coolers.  YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Defendants have wrongfully obtained and are wrongfully obtaining a benefit at YETI's expense by taking undue advantage of and free-riding on YETI's efforts and investments and enjoying the benefits of YETI's hard-earned goodwill and reputation.

91.     Defendants' unjust enrichment at YETI's expense has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Infringing

Products to the YETI Trade Dress, and by Defendants' ongoing and continuing disregard for YETI's rights.

92.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least RTIC's profits.

## Demand for Jury Trial

93.     YETI hereby demands a jury trial on all issues so triable.

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Defendants have (i) infringed the '352 Patent in violation of § 271 of Title 35 of the United States Code; (ii) infringed the D'347 Patent in violation of § 271 of Title 35 of the United States Code; (iii) infringed the YETI Trade Dress in violation of § 1125(a) of Title 15 in the United States Code; (iv) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (v) diluted the YETI Trade Dress in violation of § 1125(c) of Title 15 in the United States Code; (vi) diluted the YETI Trade Dress in violation of Tex. Bus. & Com. Code § 16.103; (vii) violated YETI's common law rights in the YETI Trade Dress; (viii) engaged in common law unfair competition; (ix) engaged in common law misappropriation; and (x) been unjustly enriched at YETI's expense, and that all of these wrongful activities by Defendants were willful, wanton, intentional, and malicious;

2.     An injunction against further infringement and dilution of the '352 Patent, the D'347 Patent, and the YETI Trade Dress, further infringement and further acts of unfair competition, misappropriation, and unjust enrichment by Defendants, and each of their agents, employees, directors, principals, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell,

distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of the '352 Patent, the D'347 Patent, and/or the YETI Trade Dress pursuant to at least 35 U.S.C. § 283, 15 U.S.C. § 1116, and Tex. Bus. & Com. Code § 16.104;

3.   An Order directing Defendants to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.   An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of the YETI Trade Dress in Defendants' possession or control, (iii) all plates, molds, and other means of making the infringing products in Defendants' possession, custody, or control, and (iv) all advertising materials related to the infringing products in Defendants' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.   An Order directing Defendants to publish a public notice providing proper attribution of the YETI Trade Dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.   An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.   An award of damages adequate to compensate YETI for the patent infringements that have occurred pursuant to 35 U.S.C. § 284 or an aware of Defendants' profits from their patent infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with

prejudgment interest and costs and reasonable attorney fees, pursuant to 35 U.S.C. § 284 and 285;

8.     An award of Defendants' profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 11125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104; and

9.     Such other and further relief as this Court deems just and proper.

July 27, 2016                                 Respectfully submitted,


By: /s/ Joseph J. Berghammer
Kevin J. Meek
Texas Bar No. 13899600
kevin.meek@bakerbotts.com
**BAKER BOTTS LLP**
98 San Jacinto Blvd., Suite 1500
Austin, TX 78701
Telephone: (512) 322-2639
Facsimile: (512) 322-8385

Joseph J. Berghammer (admitted in the Western
District of Texas)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
Sean J. Jungels (admitted in the Western District of
Texas)
Illinois Bar No. 6303636
sjungels@bannerwitcoff.com
**BANNER & WITCOFF, LTD.**
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**